# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Mezgebu Liben,   Civil No. 11-3472 (DWF/SER)

        Plaintiff,

v.   **MEMORANDUM OPINION AND ORDER**

Alejandro Mayorkas, Director,
U.S. Citizenship and Immigration
Services; and Janet Napolitano, Secretary,
Department of Homeland Security,

        Defendants.

_____

Elizabeth Holmes, Esq., Karam Law, counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorney's Office; and J. Max Weintraub and Denise S. Lippert, U.S. Department of Justice, Office of Immigration Litigation, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Combined Motion to Dismiss and for Summary Judgment brought by Defendants Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Services ("USCIS"), and Janet Napolitano, Secretary, Department of Homeland Security ("Secretary") (Doc. No. 17). For the reasons set forth below, the Court grants Defendants' motion in part.

## BACKGROUND

Plaintiff Mezgebu Liben ("Plaintiff"), a citizen of Ethiopia, is an asylee and applicant to adjust his status to that of a Lawful Permanent Resident ("LPR"). (Doc. No. 1, Compl. ¶ 7; Doc. No. 20, Ex. 1 (Doyle Decl.) ¶ 3.) Plaintiff entered the United States in September 2003 as a temporary visitor, and was granted asylum on January 24, 2006. (Doyle Decl. ¶ 3.) Plaintiff's asylum claim indicated that he was involved in the Ethiopian People's Revolutionary Party ("EPRP") from 1978 to 1979. (*Id.* ¶ 11.)[1]

Plaintiff filed an application to adjust his status from asylee to lawful permanent resident on May 18, 2007 (the "Application"). (*Id.* ¶ 4.) The Federal Bureau of Investigation ("FBI") completed Plaintiff's name check on May 26, 2007. (*Id.* ¶ 9.) Plaintiff's file indicated that he attended secret meetings, and wrote and distributed pamphlets, leaflets, posters, and other writings supporting the EPRP. (*Id.* ¶ 11.) USCIS placed Plaintiff's Application on administrative hold, and the Application is still pending. (*Id.* ¶ 10.) Defendants assert that Plaintiff's Application is on hold pursuant to USCIS policy pending future exemption-related guidance. (Doc. No. 19 at 4-5.)[2]

---

[1] USCIS has determined that the EPRP falls within the definition of a Tier III undesignated terrorist organization, as defined in the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(3)(B)(vi)(III). (Doyle Decl. ¶ 13.)

[2] The Secretary has discretionary authority to exempt certain Tier III organizations or individuals where appropriate. (Doyle Decl. ¶ 15-18.) To date, the EPRP is not included in the list of exempted groups. Defendants submit that Plaintiff's Application
(Footnote Continued on Next Page)

On November 29, 2011, Plaintiff filed the instant action, seeking to compel USCIS to adjudicate his application for lawful permanent residency. In particular, Plaintiff alleges that Defendants have violated the Administrative Procedure Act ("APA") by failing to timely adjudicate his Application for permanent residency. Defendants now move to dismiss the present case for lack of subject matter jurisdiction and for failure to state a claim, or in the alternative, to enter judgment in favor of USCIS and dismiss the case because existing case law and legal standards establish that the delay in processing the case is not, as a matter of law, unreasonable.

## DISCUSSION

**I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the plaintiff has the burden to establish that jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. If the Court finds that jurisdiction is not present, it must dismiss the matter. Fed. R. Civ. P. 12(h)(3).

---

(Footnote Continued From Previous Page)

remains on hold in accordance with agency policy pending future exemption-related guidance. (*Id*. ¶¶ 31-32.)

Defendants argue that Plaintiff's Complaint should be dismissed because 8 U.S.C. § 1252(a)(2)(B)(ii), which relates to judicial review of discretionary decisions, deprives the Court of subject matter jurisdiction. That section provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [asylum] of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). Defendants argue that the pace of USCIS's decisions over how and when to proceed with adjudicating Plaintiff's Application is discretionary and therefore not subject to judicial review. Defendants maintain that USCIS made a purposeful discretionary decision to place Plaintiff's Application, which contained evidence of terrorism-related inadmissibility, on hold.

The Secretary or Attorney General may, in their discretion, adjust to permanent residence status certain aliens admitted as asylees. 8 U.S.C. § 1159(b). The statute does not mention a particular time frame within which USCIS must adjudicate applications for adjustment of status. Defendants assert that USCIS has yet to reach final adjudication of Plaintiff's Application because a series of legislative and policy changes have affected Plaintiff's admissibility. Defendants also assert that Plaintiff's activities with the EPRP presently render him inadmissible, and that his application remains pending because of

the potential exemption of these terrorism-related grounds of inadmissibility.³

Defendants assert that USCIS's decision to withhold a final decision on Plaintiff's Application lies within its sound discretion and, therefore, this Court lacks jurisdiction to review that decision. Plaintiff, however, argues that § 1252(a)(2)(B)(ii) does not preclude the Court's exercise of subject matter jurisdiction over Plaintiff's claim because Plaintiff is not seeking review of a decision or action of the Attorney General, but instead, he is seeking to compel Defendants to issue a decision on Plaintiff's application.

There is a division among district courts on the question of whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to consider claims that the government has unreasonably delayed the disposition of an adjustment application. *See Al– Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932, 938 (D. Minn. 2011) (explaining that district courts across the country are divided, but noting that the "overwhelming majority" of district courts have concluded that § 1252(a)(2)(b)(ii) does not bar judicial review of claims alleging unreasonable delay in the disposition of applications of asylees associated with Tier III terrorist organizations). In this district, courts have held that they have jurisdiction to consider claims involving adjustment of status applications where an

---

³ Defendants point out that on December 26, 2007, Congress enacted the Consolidated Appropriations Act of 2008 ("CAA"), which expanded the Secretary's discretionary authority to exempt individuals and groups from certain terrorist-related inadmissibility grounds relating to Tier III organizations. (Doyle Decl. ¶ 18.) Subsequently, USCIS issued guidance on the adjudication of cases involving terrorism-related inadmissibility, including the instruction that adjudicators withhold adjudication of cases where the applicant may benefit from a future exercise of the Secretary's discretionary exemption authority. (*Id.* ¶ 27.)

unreasonable delay is alleged. *See id*. at 931-33. The court in *Al-Rifahe* squarely addressed the division and found compelling the reasoning of the "overwhelming majority of district courts," which hold that the provision does not "provide[ ] blanket cover for USCIS' decision to withhold adjudication of [a plaintiff's] application indefinitely." *Id*. at 932-33; *see also, Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1035 (D. Minn. 2008) ("[T]he Attorney General has discretion over what a decision will be, but not over whether a decision will be made; the Attorney General does not have discretion to refuse to exercise his discretion.").

The Court concludes that § 1252(a)(2)(b)(ii) does not strip the Court of jurisdiction to consider Plaintiff's claim that the government has unreasonably delayed in the disposition of his Application to adjust his status to permanent resident. While the ultimate authority to grant or deny adjustment of status is "unquestionably discretionary," the Court agrees with the reasoning and conclusion in *Al-Rifahe*, in particular that there is a non-discretionary duty to act on and process an application to adjust status to permanent resident. *See Al–Rifahe*, 776 at 933 (citations omitted).

There being no jurisdictional bar, Plaintiff must put forth an affirmative basis for subject matter jurisdiction. The APA does not provide an independent basis for subject matter jurisdiction, however "[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331 over suits against agencies seeking to enforce provisions of the APA." *Id*. at 934 (quoting *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088-89 (D. Minn. 2008) (concluding that § 1331 provides jurisdictional basis for APA claim of unreasonable delay in adjudicating naturalization application)). The APA further provides that federal

6

courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*") (emphasis in original).[4] Here, the Court concludes that Defendants' obligation to act on Plaintiff's Application is a "discrete agency action" that Defendants are required to take, and that once an application for an adjustment of status is properly before USCIS, the agency has a non-discretionary duty to act on the application. *See, e.g.*, *Al-Rifahe*, 776 F. Supp. 2d at 935 (citing additional cases); *Al Sawad v. Frazier*, Civ. No. 07-1721, 2007 WL 2973833, at *3 (D. Minn. Oct. 9, 2007) (joining a "growing number of district courts in concluding that USCIS has a duty to adjudicate adjustment of status applications once they have been submitted and that the APA requires the applications to be adjudicated in a reasonable time").[5]

For the above reasons, the Court concludes that it has jurisdiction to hear Plaintiff's case.

---

[4] The APA exempts from judicial oversight claims based on "statutes preclud[ing] judicial review" or "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2).

[5] Whether a court has jurisdiction to decide if a plaintiff is entitled to relief is a separate question from whether a plaintiff is entitled to relief. *See, e.g.*, *Ali*, 575 F. Supp. 2d at 1088.

## II. Failure to State a Claim

Defendants also argue that Plaintiff's Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim. In deciding a motion to dismiss pursuant to Rule 2(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise

a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

To state a claim for unreasonable delay under the APA, the delay must result in some harm to the plaintiff. *See SUWA*, 542 U.S. at 64. In his Complaint, Plaintiff alleges that he "has been unable to move forward with his life; has been deprived of his peace of mind; and deprived of important benefits, rights, and protections to which he would be entitled as a Lawful Permanent Resident of the United States." (Compl. ¶ 10.) Defendants, however, assert that Plaintiff alleges no specific harm caused by the delay. In particular, Defendants point out that USCIS has stated that Plaintiff's Application, if it were adjudicated at this time, will likely be denied. (Doyle Decl. ¶ 31.) Defendants also point out that while Plaintiff's Application remains pending, Plaintiff continues to enjoy asylee status, that all of Plaintiff's work authorizations have been approved, and that Plaintiff may be granted travel documents to travel abroad. (*Id.* ¶ 33.)

While Plaintiff's allegations of harm are quite general and non-specific, the Court must, on a motion to dismiss, construe all facts in the light most favorable to Plaintiff. The Court finds that Plaintiff has sufficiently (albeit barely) alleged the required harm stemming from the delay. *See, e.g*, *Rambang v. Mayorkas*, Civ. No. 11-3454, 2012 WL 2449927, at *5 (D. Minn. June 27, 2012). Therefore, Defendants' motion to dismiss for failure to state a claim is denied.

## III. Motion for Summary Judgment

Defendants argue, in the alternative, that they are entitled to summary judgment because there is no dispute of material fact in this case and that the time spent processing

9

Plaintiff's adjustment case is reasonable as a matter of law. Plaintiff argues that summary judgment in favor of Defendants is not warranted because the delay in adjudicating Plaintiff's application is unreasonable as a matter of law.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Court employs a six-factor test to determine whether a delay is unreasonable under the APA:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research and Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations and quotation marks omitted). The Court evaluates the *TRAC* factors below.

### A. Factors One and Two

The Court first considers the first and second *TRAC* factors. The first factor requires that the time agencies take to make a decision be governed by a "rule of reason." The second factor allows for a statutory scheme to supply content for the "rule of reason." Here, there is no congressionally mandated timetable at issue, and therefore the APA's "general reasonableness" standard applies to the second factor.[6] Plaintiff argues that because over five years have passed since Plaintiff filed his Application, and because Defendants have given no indication of when or if Plaintiff's Application will be ruled on, the delay is unreasonable. Defendants point out that the hold results directly from the

---

[6] The statutes governing an adjustment of status application and authorizing the Secretary's discretion to issue exemptions do not provide a specific time frame within which USCIS must act. *See* 8 U.S.C. § 1159(b), 1182(d)(3)(B)(i). USCIS must therefore process Plaintiff's Application within a reasonable time. *See* 5 U.S.C. §§ 555(b), 706(1).

11

CAA and CAA-based policy that directs adjudicators to place on hold certain adjustment cases that could potentially benefit from a future exercise by the Secretary of her exemption authority. Defendants submit that the time USCIS takes to determine whether Plaintiff may qualify for an exemption is not unreasonable. Defendants describe the exemption procedure as involving a careful, time-consuming process that involves the consultation between the Secretary of State, the Attorney General, and the Secretary, as well as research by law enforcement and intelligence agencies, various levels of vetting, and ultimately coordination among three Cabinet officials. In addition, Defendants assert that the hold actually inures to Plaintiff's benefit because Plaintiff would likely be denied a status adjustment without an exemption for the EPRP.

In light of the lengthy and complicated exemption process, which requires the involvement of several agencies and significant agency consultation, the Court concludes that the time spent processing Plaintiff's Application, thus far, is not unreasonable as a matter of law. Defendants have submitted evidence that the Secretary and other government officials have been regularly exercising their discretionary authority and that USCIS intends to adjudicate Plaintiff's Application when an exercise of the discretionary exemption authority that would apply to Plaintiff becomes available. (Doyle Decl. ¶¶ 28, 31.) In addition, other cases with similar facts have found similar delays to be reasonable. *See Debba v. Heinauer*, Civ. No 09-1540, 2010 WL 521002, at *3 (D. Minn. Feb. 16, 2010) (eight-year delay not unreasonable); *Rambang*, No. 11-3454, 2012 WL 2449927, at *6 (D. Minn. June 27, 2012) (four-year delay not unreasonable).

The first and second factors favor Defendants.

## B. Factors Three and Five

The Court considers factors three and five together. These factors concern the nature and extent of the interests affected by the delay, particularly as the effects of the delay involve Plaintiff's health and welfare. To this effect, Plaintiff submits that he has experienced substantial prejudice resulting from Defendants' failure to adjudicate his Application. Specifically, Plaintiff claims that he "has been unable to move forward with his life; has been deprived of his peace of mind; and deprived of important benefits, rights, and protections to which he would be entitled as a Lawful Permanent Resident of the United States." (Compl. ¶ 10.) Plaintiff also asserts that the delay has deprived him of the rights and privileges that U.S. citizenship confers. Plaintiff further asserts that Defendants' interests will not be prejudiced by the adjudication of his Application. Defendants assert that they have an interest in following the CAA and related policy, as well as a national security interest. *See, e.g.*, *Hassane v. Holder*, Civ. No. 10-314Z, 2010 WL 2425993, at *5 (W.D. Wash. June 11, 2010) (noting compelling government interest in creating new policy related to exemptions for Tier III terrorist organizations).

Defendants' interests must be weighed against the effect of further delay on Plaintiff's interests, particularly his health and welfare. While the Court acknowledges that Plaintiff has alleged hardship caused by the delay, such as the inability to move forward and the deprivation of his peace of mind, the Court concludes that those interests are outweighed by Defendants' interests in carrying out its congressional mandate and in carefully completing the exemption process in this terrorism-related inadmissibility case. Plaintiff admits to having been a member of the EPRP, a group that warrants

categorization as a terrorist organization under 8 U.S.C. §1182(a)(3)(B)(vi)(III). As explained above, the exemption process in terrorism-related cases is complex and potentially time-consuming. The harm Plaintiff argues he has suffered does not outweigh Defendants' interests in national security and in completing the exemption process in terrorism-related cases, particularly since Plaintiff has been able to apply for documentation allowing him to work and travel while his Application is being processed.[7]

### C. Factor Four

The fourth factor involves considering the effect of expediting the delayed action on other agency activities. Plaintiff asserts that USCIS does not possess unfettered discretion to relegate his Application to a state of limbo. Defendants, however, argue that Plaintiff's insistence upon immediate adjudication of his Application directly challenges the agency's process for exercising the Secretary's discretionary exemption authority. In particular, Defendants claim that an order requiring them to expedite the adjudication of Plaintiff's Application would truncate any consideration of a potential exemption that might benefit Plaintiff. Defendants also assert that expediting adjudication would intrude on agency discretion in matters relating to national security.

---

[7] The Court also notes that there is no dispute that there is no current exemption that would benefit Plaintiff. Defendants represent that Plaintiff's Application is under current review for qualification under a new exemption signed by the Secretary on or about August 10, 2012.

As discussed above, Plaintiff's Application implicates national security because of his admitted involvement with the EPRP. Defendants have persuaded the Court that expediting the delay would intrude into agency discretion on issues of national security. The Court finds that this factor favors Defendants.

D.     **Factor Six**

There is no dispute that Plaintiff's Application is on hold because, after the passage of the CAA, Plaintiff might benefit from a future exercise of the Secretary's discretionary exemption authority. Even so, Plaintiff asserts that a five-year delay in the adjudication of his Application arguably constitutes impropriety. Here, there is no evidence that Defendants have acted with impropriety. Thus, this factor does not weigh in Plaintiff's favor.

Considering all of the above, and considering the particular circumstances of this case, the Court concludes that a five-year delay in issuing a final decision on Plaintiff's Application is not unreasonable. The Court notes that it is aware of the real effects that the delay has on Plaintiff, but, at this time, finds that any harm to Plaintiff is outweighed by Defendants' substantial interests. Despite its ruling today, the Court notes that, at some point, a continued delay by Defendants will become unreasonable. *See, e.g.*, *Al-Rifahe*, 766 F. Supp. 2d at 937-38 (government not entitled to summary judgment where plaintiff's application pending for thirteen-years and a government memo lifted hold on plaintiff's application). Thus, the Court strongly suggests that Defendants take affirmative and meaningful steps to move Plaintiff's Application forward towards

consideration. Based on Defendants' representation that Plaintiff's Application is presently under review for qualification under a new exemption, the Court expects that Plaintiff's Application will be resolved expeditiously.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Combined Motion to Dismiss and for Summary Judgment (Doc. No. [17]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion for summary judgment is **GRANTED**.

2. The motion to dismiss is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 8, 2013          s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge